[No. 14275.   Department Two. — June 17, 1892.]

In the Matter of the Estate of FERRIS JEWETT MOORE, Deceased.

ESTATES OF DECEDENTS — SETTLEMENT OF FINAL ACCOUNT — ORDER APPOINT-
ING EXECUTOR — NOTICE TO HEIRS — ESTOPPEL. — Where the order ap-
pointing an executor, and under which he qualified as such, recited that
citations had been duly issued and served, and notices duly given accord-
ing to law, and the executor took charge of the property of the estate as
executor, holding possession thereof for many years until cited by a
legatee to render a final account, claiming no right save as executor, he
is estopped from claiming, upon a settlement of his final account, that
the order appointing him as executor was void because proper citations
to the heirs were not issued and served.

ID. — DEVISE IN TRUST — ACCUMULATION FOR BENEFIT OF SON — SUPPORT OF FAMILY — NEGLECT OF EXECUTOR. — Where an executor was appointed by the will of the testator as a trustee to invest a sum of money in trust for the testator's son, and to allow the increase to accumulate until the son should attain majority, when the sum, and the increase thereof, was to be paid him, and in the next clause of the will the residue of the estate, after the payment of debts, was given to the executor, in trust, to pay the interest thereon, and so much of the principal as might be necessary, to the widow of the testator, for her support, and for the support and education of his son, the expenditure by the executor of a large sum for the erection of a building upon property belonging to the estate, the rents of which were paid to the boy's mother for their support, cannot take the place of the investment first directed to be made, and accumulated for the benefit of the son, or excuse the failure of the executor to make such investment.

ID. — LIABILITY OF EXECUTOR — USE OF LEGAL-TENDER NOTES TO BE INVESTED IN TRUST — GOLD VALUE — INTEREST. — Where the executor failed to procure an order to distribute the sum of three thousand dollars in legal-tender notes, devised to him as trustee, in trust, for investment and accumulation of interest, and made no investment thereof, but used the money in his own business for many years, he is chargeable in his final account with the value of the legal-tender notes in gold at the time when the investment should have been made, with interest on such value, and cannot be charged with the difference between the face amount of the legal-tender notes and their value in gold, and interest on the face amount of the notes.

APPEAL from an order of the Superior Court of Sacramento County denying a new trial.

The facts are stated in the opinion.

*Johnson, Johnson & Johnson,* for Appellant.

*George A. Blanchard,* and *Catlin & Blanchard,* for Respondent.

TEMPLE C. — Appeal from an order denying a motion for a new trial upon a contest over the final account of an executor.

The testator died in 1868, leaving a widow and one child, — a son about ten months old. The will was admitted to probate May 11, 1868, and the appellant was appointed executor, and at once qualified and entered upon his duties as such. He returned an inventory of the estate July 7, 1868, which showed personal property of the value of $15,176, and two lots in Sacramento appraised at

$1,461. The personal property consisted of solvent debts and a stock of goods. The latter were sold for nearly one thousand dollars above the appraised value, after paying the expenses of sale, and the sale was approved April 27, 1870.

Notice to creditors was duly published May 11, 1868. No claims against the estate were presented.

The executor rendered no account of his administration until December, 1879, and then rendered no formal account, as required by the statute, but only a statement of certain moneys received from his agent in charge of the property, or some of it, and disbursements made by him.

In August, 1884, he filed a second account, which purports only to be a statement of receipts of rents and the disbursements of the same. A similar account, equally defective, was filed March 8, 1889.

Having been cited to render a final account by the legatee, who had arrived at the age of majority, he filed what purports to be a final account June 21, 1889. This is little more than a recapitulation of the former reports, and also wholly fails to show what had become of the moneys received by the executor, except as to the rents of the real property received since the testator's death, which, it seems, amounted to $12,704. The court, however, proceeded to ascertain a balance from the evidence, and entered a final decree accordingly, adjudging the executor indebted to said estate in the sum of $12,577.50.

No brief has been filed on behalf of the respondent.

The executor, on this appeal, objects that the order appointing him as such executor is void, because proper citations to the heirs were not issued and served. He took charge of the property of the estate as executor, having duly qualified under the order. For twenty odd years he has remained in possession, claiming no right save as executor, and now presents his final account as such, asking for a settlement and discharge, and in the very proceeding objects to the jurisdiction of the court. The order appointing him, and under which he quali-

fied, recites that citations had been duly issued and
served, and notices duly given according to law. If the
notices were not in fact given, it was the fault of the
appellant, and his taking possession of the estate was
wrongful. He cannot make this objection. (*Moore* v.
*Earl*, 91 Cal. 632.)

It seems that the executor, without authority, used
some five thousand dollars of the money of the estate to
erect a building upon one of the lots belonging to the
estate in Sacramento. The rents of this building have
since been paid to the surviving widow of the testator,
who has supported Ferris Jewett Moore, Jr., son of the
testator.

The ninth subdivision of the will is as follows: " I
give and bequeath to my said executor the sum of three
thousand dollars in trust of [for] my son, Ferris Jewett
Moore, Jr., and I direct my said executor to invest and
keep invested the said sum of three thousand dollars,
and allow the increase thereof to accumulate, and when
my said son shall arrive at his majority, I direct my
said executor to pay over to him the said sum, and the
increase thereof, and in the event of the death of my
said son during his minority, then the same shall go
[to] my heirs forever."

'By the tenth subdivision, the testator gave to his ex-
ecutor the residue of the estate, after paying the debts,
expenses, and other legacies, in trust, to pay the interest
thereon, and so much of the principal as might be ne-
cessary, to his widow, for her support, while she remained
his widow, and for the support and education of his son
until he should arrive at the age of majority. By a pre-
vious provision in the will, the executor was authorized
to sell at public or private sale all the property of the
estate, real or personal, and convert the same into money
or securities, and directed to pay all bequests, legacies,
and appropriations in the will in United States legal-
tender currency, which the probate court construed to
mean legal-tender notes.

The executor, as the court decided, did not make the

investment directed by the ninth subdivision of the will, and therefore the court charged him with the three thousand dollars, and credited him with two thousand two hundred dollars, the cost, in gold, in 1870, of three thousand dollars, legal-tender notes. Legal interest was then computed upon this sum until the accounting.

Appellant claims that he did invest this three thousand dollars in the building placed upon the lot belonging to the estate. This claim the probate court decided against him, and we think correctly. There are many cogent and obvious reasons for holding that the money expended in the erection of this building was not an investment under the ninth subdivision of the will. And notwithstanding his positive testimony to that effect, it is also obvious that the executor himself did not so consider it. Under that subdivision he was required to allow the increase to accumulate. In fact, he paid the rents to the mother of the legatee for his support, as he was required to do with the profits of the property held by him in trust under the tenth subdivision.

We cannot see, however, what authority the court had to charge the executor with the difference between the value of the money held by him, as executor, in gold, and three thousand dollars in legal-tender notes, which is virtually what it did by the method pursued.

By the ninth subdivision, Hathaway was vested with this money as trustee. Had the trustee named been a third person, the payment by the executor to such trustee would have entitled him to a credit for that amount. As he was himself the trustee, he should have procured an order distributing the amount to himself as trustee, and should have made the investment. Perhaps, had he in fact made the investment, the same result would have followed, and he would, as executor, have been entitled to a credit of that sum. But he procured no such partial distribution, and made no investment of the money. It would seem to follow, then, that he still held the money as executor, and his default consists in not promptly settling the estate. It was also found that he

used the money in his own business. This would make him liable for interest.

If these views are correct, the other points made do not seem to be of consequence.

The result would be, that the decree should be modified by simply deducting from the balance found the amount by which it was increased, by charging the profit which would have been made if three thousand dollars in legal-tender notes had been purchased, which can easily be done.

BELCHER, C., and VANCLIEF, C., concurred.

The COURT. — For the reasons given in the foregoing opinion, the order appealed from is reversed, and the court below is directed to modify its decree settling the account of the appellant, by charging him therein with the sum of two thousand two hundred dollars as the amount of the legacy given by Ferris Jewett Moore, Jr., by the last will and testament of Ferris Jewett Moore, deceased, instead of the sum of three thousand dollars in legal-tender notes, and calculating interest on said sum of two thousand two hundred dollars in the same manner and for the same periods as it is calculated in the report of the referee on three thousand dollars.