[No. 18388. Department Two. March 25, 1924.]

*In the Matter of the Estate of* F. R. BROWN, *Deceased.*
CHLOE D. BROWN, *Appellant,* v. GEORGE SCOFIELD
*et al., Respondents.*[1]

EXECUTORS AND ADMINISTRATORS (168)—FINAL ACCOUNT—REVIEW —SEPARATE OR COMMUNITY PROPERTY. Error cannot be assigned, upon the final account of an estate, in that the separate and community property were not separately treated, where adverse interests claimed all the property as belonging to different classes, and upon a final determination of the question, each class was treated separately.

SAME (160)—SETTLEMENT OF ACCOUNT—ATTORNEY'S FEES. The allowance of executors' attorney's fees is lodged in the discretion of the court by Rem. Comp. Stat., § 1528.

SAME (62)—ALLOWANCE TO WIDOW—VACATION OF ORDER—CONCLUSIVENESS. In the absence of an appeal from an order directing executors to make no further payments upon a widow's allowance for support, and cancelling previous orders, error cannot be assigned thereon, on appeal from an order settling the final account.

SAME (4)—JURISDICTION OF COURT. The jurisdiction of the probate court of T. County is determined by an order that the deceased died in K. county, being at that time a resident of T. county; and objection thereto cannot be made by one who appeared generally and received the benefits of orders made in her favor.

SAME (158-1)—SETTLEMENT OF ACCOUNT—CREDITS—FAILURE TO INVEST FUNDS—INTEREST. The executors of a non-intervention will should not be charged with interest on cash on hand, when they acted in good faith and had applied for permission to make partial distribution, which was held up by a contest beyond their control which might be determined at any time.

SAME (159-1)—EXPENSES AND CHARGES — PROPERTY LIABLE — APPORTIONMENT. Where the total value of an estate was $270,000 and

[1]Reported in 224 Pac. 678.

the widow's share, one-half interest in the community property, was $7,000, the expenses of administration and attorney's fees are properly computed in their entirety and apportioned against the widow in the proportion of seven two-hundred-and-seventieths thereof.

SAME (159-1)—EXPENSES AND CHARGES—INHERITANCE TAX. Complaint cannot be made by a widow of inheritance taxes, where none was charged upon a special bequest of $10,000 nor on her share of the community property, and one per cent was charged on her half of a homestead allowance and on allowances for support.

SAME (165)—COMPENSATION—ALLOWANCE BEFORE SETTLEMENT—INTEREST. The power of the court to authorize payments to executors of a non-intervention will includes power to approve of payments made, so that interest thereon is not chargeable against amounts so approved.

Appeal from an order of the superior court for Thurston county, Wilson, J., entered October 15, 1923, approving the final account of executors and distributing an estate, after a hearing upon objections before the court. Affirmed.

*R. J. Meakim, W. G. McLaren,* and *P. M. Troy,* for appellant.

*Frank C. Owings,* for respondents.

MITCHELL, J.—F. R. Brown died November 26, 1918, leaving a nonintervention will executed July 26, 1912, by which he made to his wife and twelve others specific bequests, and then made eight of them, not including his wife, residuary legatees and devisees. C. J. Lord and George Scofield were nominated in the will as executors. Upon the will being admitted to probate, they qualified as executors on December 2, 1918, and since then have acted as such. As executors, they duly filed a final report and account with a petition for the approval of it, and for an order of distribution. On the day fixed for the hearing, of which hearing the court found that due and proper notice had been given, the widow Chloe D. Brown, appearing separately, and

the eight residuary legatees filed written exceptions to the final account and report. Upon the hearing, an order was entered settling the account and distributing the property. From that final order, Chloe D. Brown has appealed.

The first assignment is that the court erred in refusing to strike the final account and not requiring that the community and separate property be accounted for separately. The first part of the assignment is not discussed in the brief, and as to the other, it appears that, early in the history of the estate, divergent opinions arose, the widow claiming that all the property was community property, while the residuary legatees claimed all of it was the separate estate of the decedent. The dispute was not settled until the decision in *In re Brown's Estate,* 124 Wash. 273, 214 Pac. 10, and promptly thereafter the final report was filed, wherein each class of property as determined by that decision appears to be treated separately with reference to the receipts and disbursements connected with it.

The second assignment relates to the allowance of the executors' attorney's fees. That matter is lodged by statute in the discretion of the court. Rem. Comp. Stat., § 1528 [P. C. § 9790]. Upon consideration of the record, we are satisfied the appellant has no just cause to complain of the amount allowed.

The third assignment is the refusal of the court to grant the widow an allowance for maintenance and support, upon an oral application made at the same time she gave her notice of the present appeal. On January 20, 1919, an order was made on her application for maintenance and support money requiring the payment of $500, and also $200 per month, beginning as of December 1, 1918. It appears that thereafter all such payments were promptly made until, upon due

consideration of that matter, together with others, upon a citation issued and served, and of the appearance thereunder of the widow represented by her attorneys, the court, upon finding that $4,900 had been paid the widow, entered an order, which was submitted to her attorneys, on November 20, 1920, directing the executors to make no further payments on account of widow's allowance, and canceling the order under which payments had theretofore been made. No appeal was taken from that order, which we think concludes the matter.

The fourth assignment is that the court erred in entertaining jurisdiction of the estate and of the person of the widow. Shortly after the death of F. R. Brown, the superior court of Thurston county, upon petition for the probate of his will, decided that the decedent died in Seattle, being at that time a resident of Thurston county, and entered an order accordingly. That was an order determining jurisdiction of the estate. As to jurisdiction of the person, the record has abundant proof that in the proceedings she has appeared generally, including the final hearing, and in a number of other instances has so appeared and received the benefits of orders in her favor.

The fifth assignment is that the court erred in refusing to charge the executors with interest on cash in their possession during administration. The amount of money received that belonged to the community was small compared to that belonging to the separate estate of the decedent going to the residuary legatees, who make no protest or complaint in this respect. But, upon principle, appellant's contention is without merit. It appears that, as soon as there were sufficient funds on hand, the executors applied for leave to make partial distribution by way of payment of the special legacies, and upon an order made therefor the widow

was paid her specific bequest of $10,000, less an amount she admitted she owed the separate estate of the decedent. At the same time the trial court determined, upon petition of the executors for a construction of the will, that all of the property of the estate was the separate property of the decedent, and from the date of that order the estate has been in the course of litigation. There is no proof nor claim that the executors have done anything to retard the conclusion of the litigation or the settlement of the estate; nor is there any proof that they knew at what time they would be called upon to account and pay. They were acting under a nonintervention will, and the court at no time was asked, nor did it direct, the investment of any funds in the hands of the executors. 11 R. C. L., Executors and Administrators, § 156, says:

"It may be stated as the general rule that the personal liability of an executor or administrator to the distributees of an estate for interest, where there has been delay in the closing up and settlement of the estate, depends entirely upon the question whether the delay was reasonable or unreasonable under all the circumstances of the particular case, he being free from personal liability for interest where the delay was reasonable, and chargeable with interest where the delay was unreasonable."

In *In re Hagerty's Estate,* 105 Wash. 547, 178 Pac. 644, which was a case of a nonintervention will wherein, as in the present case, the executors were vested by the terms of the will with very large discretion in the management of the estate and exonerated from the giving of bonds, the same contention was made that the executors should be charged with interest on funds remaining in their hands for nearly two years. Disposing of the contention, we said:

"We think it sufficient to say in answer to this contention that, while Harmon did have in his hands a

considerable sum which was not yielding interest or income during that period, it is apparent that he could not foresee with any degree of certainty how long it would be before he would be compelled to pay out such funds upon distribution. During that time matters were pending which had to be disposed of before final distribution, the final disposition of which was uncertain as to time. We think the superior court did not abuse its discretion in refusing to hold that Harmon should have invested the funds during that time so as to yield interest.''

The rule we think is applicable here. There is no showing whatever of any lack of good faith on the part of the executors in holding themselves ready to make distribution whenever requested, during a period of delay entirely beyond their control and susceptible of termination at any moment. Such matter as the one presented by this assignment is so largely within the discretion of the trial court that his judgment therein should not be disturbed except upon a showing of abuse, which does not appear in this case.

The sixth assignment is that the court erroneously decided that a certain parcel of Olympia tide land valued at $526, not included in the original inventory, was the separate property of the decedent. The evidence shows that, at the date of the death of the decedent, the tide land was held under a contract with the state running to the Semper-Klale Investment Company, and this court has heretofore determined that all such property was the decedent's separate property.

The seventh assignment is that a promissory note made by the appellant, in the sum of $900, payable to the Semper-Klale Investment Company, should have been treated as community property. At the time she was paid the special bequest of $10,000 as provided for by the will, she agreed in open court that the

amount of that note and interest should be deducted, which was done; and besides, in the case of *In re Brown's Estate, supra,* as already stated, it was decided that all of the property of the Semper-Klale Investment Company was the decedent's separate estate.

The eighth assignment of error also relates to the proceeds of property standing in the name of the same investment company and was not community property.

Assignment nine is that error was committed in decreeing the property described in a certain paragraph of the final account to be separate property of the decedent rather than community property. It is difficult to understand the assignment. The paragraph referred to consists of an itemized statement of all receipts of money stated to be from all sources except the Semper-Klale Investment Company, and appears to have no bearing upon the determination made by the court with reference to whether it is or was separate or community property.

The tenth assignment is that the court erred in allowing the items in paragraph 11 of the final account as expenses to be charged against the community property. The record does not show they were so charged, as we understand. The paragraph referred to consists of an itemized statement of all disbursements for all purposes except those made on behalf of the Semper-Klale Investment Company. The value of the total property of the estate was approximately $270,000, the widow's share, or one-half of the community property, was practically $7,000. It appears that the court computed the expenses of the estate in their entirety and charged the widow's share with seven two-hundred-and-seventieths thereof, and the balance of those expenses were charged to the residuary legatees. The division was proper as between the op-

posing interests of the widow on one side and the residuary legatees on the other. The same may be said of the executors' and attorney's fees and of the Federal estate tax referred to in assignments 11, 12 and 13. They were proper charges of administering the estate.

In assignments 13 and 14 complaint is made that an inheritance tax was charged against the property of the surviving spouse, the appellant. There was none because of the special bequest of $10,000, nor because of her share of the community property. All that was charged was one per cent on her half of a homestead allowance of $3,000 making $15, and on the widow's support allowance of $4,900, less $1,000 deductible under the inheritance tax statute, or $3,900 at one per cent, amounting to $39, which added to the $15 amounts to $54, the total amount charged, of which she cannot complain. The other portion of the inheritance tax, viz., $12,334.08, was charged to the residuary legatees.

It is claimed that interest should have been charged on the amounts applied on the fees of executors without any order of the court. The amounts so used were far less than the amounts provided for by the specific terms of the will, so far as executors' fees are concerned, and much less as to attorney's fees than what was later determined by the court to be reasonable. Such payments, particularly under a nonintervention will, are subject to approval by the court, and in this case they were approved later on by an order of the court. The complaint in this respect is controlled by the rule announced in *In re McDonald's Estate,* 110 Wash. 366, 188 Pac. 523, wherein we said:

"The power to authorize payment includes the power to approve any payment previously made."

Some other contentions of minor importance are made in a general way without reference to any formal

assignment, which do not appear to justify any detailed consideration. Suffice it to say they have received careful consideration which shows that they were properly disposed of by the account and final order entered thereon.

The final account appears to be specific, accurate and complete, and we are satisfied that the order approving it and decreeing distribution of the estate are according to the will and the law.

Affirmed.

MAIN, C. J., FULLERTON, and BRIDGES, JJ., concur.