IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

| | | |
|---|---|---|
| In the Matter of the Estate of<br>CAROLE STEVENSON CHRISTIAN, | )<br>)<br>) | No. 68724-7-I |
| Respondent, | )<br>) | DIVISION ONE |
| v. | )<br>) | UNPUBLISHED OPINION |
| LOWELL CHRISTIAN, | )<br>)<br>) | |
| Appellant. | ) | FILED: September 23, 2013 |

SCHINDLER, J. — Lowell Christian appeals from a trial court decision rejecting his

claims to a share of the estate of his spouse. Christian failed to make any showing that

his long-estranged spouse attempted to defraud him of community property by

erroneously referring to him as deceased in her will. Nor did Christian demonstrate the

existence of any community assets in the estate. And because his wife did not die

intestate and he is not an omitted spouse, Christian was not entitled to any share of her

separate property. We also reject Christian's remaining challenges to the trial court's

discretionary rulings, and affirm.

FACTS

The relevant facts are essentially undisputed. Carole Christian and Lowell

Christian married in 1968. The couple separated in about 1971. Carole and Lowell

lived apart until Carole's death in 2010, but never dissolved their marriage.[1] After 1971,

---

[1] For purposes of clarity, we refer to Carole and Lowell Christian by their first names.

Carole and Lowell had only infrequent contact and provided no financial or emotional support to one another. Lowell had no contact with Carole after about 1992.

While separated, both Carole and Lowell held themselves out as single and had long-term romantic relationships with others. For the past 17 years, Lowell has lived with his girlfriend. When Lowell and his girlfriend purchased a house together, Lowell characterized himself as an "unmarried man" on the deed of trust.

In May 1972, Carole purchased a vacant lot in King County. The statutory warranty deed listed Carole as a "single woman." Carole built a house on the property, where she lived until her death. Lowell acknowledged that Carole had acquired the property and house with her separate earnings and an inheritance, and that he "didn't have a dime in it."

Carole executed a will in 1992. In the will, Carole declared that she was "a widow, my husband having predeceased me," and left the bulk of her estate to her former boyfriend Charles Esposito. The will named Esposito as the personal representative.

Carole died on July 10, 2010. Her will was admitted to probate, and the court appointed Charles Esposito as personal representative and Esposito's daughter, Angela Esposito, as co-personal representative.

Lowell did not learn of Carole's death until May 2011. On July 22, 2011, he filed a "Petition for Family Allowance and Determination of Pretermitted Heir" in the probate proceeding. Based on the erroneous assertion in Carole's will that he was deceased, Lowell claimed that he was a "pretermitted heir" of the Estate, and entitled to all of the couple's community property and one-half of Carole's separate property. Lowell also

2

asked the court to appoint him co-personal representative in place of Angela Esposito, and award him attorney fees and a monthly family allowance of $1,000. In a supplemental memorandum, Lowell argued that the erroneous statement in the will rendered Carole intestate as to him and that he was therefore entitled to his intestate share of the Estate as a surviving spouse. See RCW 11.04.015.

The matter proceeded to a bench trial on December 13, 2011. Several witnesses testified that over the years, Carole had occasionally implied that her husband was dead. Roland Schloer continued to have contact with both Carole and Lowell after the separation. Schloer testified that when he spoke with Carole about three years before her death, she was aware, as always, that Lowell was alive. Lowell acknowledged that "in every other way except for formally dissolving [the] marriage," he and Carole had ended their union when they separated in 1971.

The trial court dismissed Lowell's petition. The trial court found that at the time of her death, Carole knew Lowell was alive and "chose to disinherit [him]." The court found no evidence of fraud in the preparation and execution of Carole's will and rejected Lowell's claim that Carole died intestate as to him. The court concluded that Lowell was not entitled to any share of the Estate and awarded the Estate reasonable attorney fees and costs.

## ANALYSIS

On appeal, Lowell contends that the trial court erred in rejecting his claim that Carole committed fraud and died intestate as to him. Where, as here, the trial court has weighed the evidence in a bench trial, our review is limited to determining whether the trial court's factual findings are supported by substantial evidence and, if so, whether the

findings support the trial court's conclusions of law and judgment. Sunnyside Valley Irrigation Dist. v. Dickie, 111 Wn. App. 209, 214, 43 P.3d 1277 (2002). Unchallenged findings of facts are verities on appeal. Cowiche Canyon Conservancy v. Bosley, 118 Wn.2d 801, 808, 828 P.2d 549 (1992).

Lowell contends that Carole intentionally and "fraudulently" claimed that he was dead, thereby rendering her will "unequivocally . . . fraudulent on its face." Lowell further claims that the trial court approved a "fraud on the court" when it failed to award him all community property and one-half of Carole's separate property.

But Lowell does not clearly identify the precise nature of the alleged fraud or address the elements of fraud. See In re Estate of Kessler, 95 Wn. App. 358, 374, 977 P.2d 591 (1999) (party alleging fraud must prove all the elements by clear, cogent, and convincing evidence).[2] The mere fact that Carole intended to disinherit Lowell is neither unlawful nor a presumptively fraudulent attempt to deprive him of community property. And Lowell has not challenged the trial court's findings that Carole was competent when she executed her will, and that "[t]here exists no evidence of fraud in the execution or fraud in inducement of Carole Christian's Will." On the record before us, Lowell's conclusory allegations of fraud are without merit.

Nor has Lowell presented any legal argument or citation to authority to support his theory that Carole "died intestate as to Lowell Christian because of the false statement contained in the Will." Lowell's assertion that he is an "omitted heir" is

---

[2] For the first time in his reply brief, Lowell identifies the elements of fraud and asserts that "[e]very one of these elements is met by the action of Carole Christian." But this argument comes too late and, in any event, Lowell's conclusory allegations are insufficient to warrant appellate review. See Cowiche Canyon, 118 Wn.2d at 809 (issue argued for the first time in a reply brief is too late to warrant consideration).

4

equally meritless. RCW 11.12.095, Washington's omitted spouse statute, provides that "[i]f a will fails to name or provide for a spouse . . . whom the decedent marries . . . after the will's execution," the omitted spouse must receive a share of the decedent's estate equal in value to that "if the decedent had died intestate." RCW 11.12.095(1), (3).[3] Because Carole and Lowell married long before she executed her will, Lowell cannot be an "omitted spouse" under RCW 11.12.095. See also RCW 11.12.095(3) (omitted heir not entitled to any share of estate if trial court determines on the basis of clear and convincing evidence that no share is "in keeping with the decedent's intent"); In re the Estate of Deoneseus, 128 Wn.2d 317, 319, 906 P.2d 922 (1995) (purpose of omitted spouse statute is "to prevent the unintentional disinheritance of the surviving spouse of a testator who marries after making a will and then dies without ever changing it").

Lowell next contends that the trial court erred in rejecting his request under RCW 11.54.010 for a monthly family allowance award from Carole's estate. A family allowance is "cash out of the estate awarded, within the court's discretion . . . for the maintenance of the family according to the circumstances during the . . . settlement of the estate." In re Estate of Garwood, 109 Wn. App. 811, 813 n.1, 38 P.3d 362 (2002). The law favors such awards "for the protection of the surviving spouse and as a measure of fairness." In re Estate of Crawford, 107 Wn.2d 493, 502, 730 P.2d 675 (1986).

As Lowell acknowledges, however, when exercising its discretion to award a family allowance to a surviving spouse, the trial court considers, among numerous other

---

[3] (Emphasis added.)

5

factors, the decedent's intent, the provisions for the claimant in the decedent's will, and the "duration and status of the marriage . . . at the time of the decedent's death." RCW 11.54.040(3). The trial court did not abuse its discretion in denying Lowell's request for a family allowance.

Lowell next contends that the trial court erred in refusing to award him the community property in Carole's estate. Lowell argues that $29,000 in proceeds from Sara Lee Corporation stock that was purchased with marital funds in 1968 is community property. Under the probate code, a surviving spouse is entitled to a one-half share of the community property following the death of the other spouse. RCW 11.02.070.

It is undisputed that the stock was converted into cash at some point prior to Carole's death and that the proceeds eventually reached the Washington State unclaimed property division. In 2009, Lowell collected one-half of the proceeds, which were being held in his name, without telling Carole about the remaining funds held in her name. After Carole's death, the personal representative collected the remaining funds held in her name. As the trial court found, Lowell had already received his one-half share of the proceeds at the time he filed his petition.

At trial, Lowell testified that he and Carole had purchased a house with community funds, and that Carole had sold the house after the separation and never gave him any of the proceeds. But Lowell failed to present any evidence of the alleged sale or the amount of the proceeds. On appeal, Lowell repeatedly asserts without any citation to the record that Carole sold the house "by forging his name on a deed to convey the house." But contrary to Lowell's assertion, the trial court was not required to find his conclusory allegations credible merely because they were unrebutted. Nat'l

6

Bank of Commerce of Seattle v. Thomsen, 80 Wn.2d 406, 418, 495 P.2d 332 (1972) (Stafford, J., dissenting in part and concurring in part). On this record, Lowell has failed to identify any community assets remaining in Carole's estate.

Lowell contends that the trial court violated his due process rights when it based its decision on exhibits and declarations that were not properly introduced at trial. Lowell asserts that the evidence was irrelevant and admitted without foundation, and that the trial court erroneously considered evidence that it had expressly excluded.

Contrary to Lowell's assertion, the five challenged declarations were disclosed and provided to him several months before trial. Three of the declarants testified at trial and were therefore subject to Lowell's cross-examination.

Moreover, Lowell's arguments do not identify in any meaningful way the contents of the challenged declarations or the specific exhibits and evidentiary rulings that he is challenging. Nor has Lowell addressed the arguments and objections that were raised in the trial court, or demonstrated any prejudice resulting from the challenged rulings. Under the circumstances, we cannot address the alleged errors. See Saunders v. Lloyd's of London, 113 Wn.2d 330, 345, 779 P.2d 249 (1989) (appellate court will decline to consider issues unsupported by cogent legal argument and citation to relevant authority).

Lowell also appears to suggest that the challenged evidence was unnecessary and inadmissible to establish the testator's intent. But he has provided no supporting argument for this claim. And, in any event, Lowell has not challenged the trial court's finding that Carole intended to disinherit him. That finding is therefore a verity on appeal.

Finally, Lowell contends that the trial court erred in awarding the Estate costs and attorney fees incurred in responding to his petition. Lowell's sole contention is that the trial court erroneously found his petition to be frivolous. But the trial court made no such finding. Rather, the court based its award on RCW 11.96A.150(1), which grants the trial court broad discretion to award costs, including attorney fees, "in such amount and in such manner as the court determines to be equitable." Lowell has not made any showing that the award was manifestly unreasonable or based on untenable grounds. Accordingly, he has not demonstrated an abuse of discretion under RCW 11.96A.150(1).[4]

The Estate has requested an award of attorney fees on appeal under RCW 11.96A.150(1) and RAP 18.1. Because the Estate has prevailed on all issues on appeal and should not be further depleted by the expense of appellate fees, we award the Estate reasonable attorney fees on appeal, subject to compliance with RAP 18.1(d).

Affirmed.

WE CONCUR:

---

[4] In light of our decision, we need not address the trial court's alternative theories based on estoppel and defunct marriage.